UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------x

MADISON CAPITAL COMPANY, LLC,

        Plaintiff,

- against -

ALASIA, LLC, OPHRYS, LLC AND DODEKA, LLC,

        Defendants.

--------------------------------------------------------------x

```
┌─────────────────────────────┐
│ USDS SDNY                   │
│ DOCUMENT                    │
│ ELECTRONICALLY FILED        │
│ DOC #: _____            │
│ DATE FILED: 5|12|09         │
└─────────────────────────────┘
```

Case No. 09-CV-558

DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS IN ITS
ENTIRETY

McMahon, J.:

## I. INTRODUCTION

Madison Capital Company, LLC ("Plaintiff" or "Madison") brings this diversity action,

pursuant to 28 U.S.C. § 1332(a), against Alasia, LLC, Ophrys, LLC and Dodeka, LLC

(collectively, "Defendants") asserting three claims for relief for breach of contract, breach of

implied covenant of good faith and fair dealing, and negligent misrepresentation. The claims

arise from a business arrangement between the parties, pursuant to which Madison extended

loans to Alasia for the purchase of charged-off credit card receivables.

Defendants now move to dismiss counts two and three of the Complaint, breach of

implied covenant of good faith and fair dealing and negligent misrepresentation, for failure to

satisfy Rule 12(b)(6) of the Federal Rules of Civil Procedure. Madison opposes this motion. For

the following reasons, defendants' motion to dismiss both Counts II and III is granted.

## II. BACKGROUND

The following facts, drawn from the Complaint, are assumed to be true for the purposes of this motion.

### A. The Parties

Madison is a Delaware limited liability company with a principal place of business in New York. (Compl. ¶ 1.) All of Madison's members are citizens of Colorado. (Id.)

Defendants are interrelated entities in the business of purchasing portfolios of previously charged-off credit card receivables that then attempt to collect on the debt. (Compl. ¶11.) Defendant Alasia, LLC ("Alasia" or "Borrower") is a Delaware based limited liability company with a principal place of business in Washington. (Id. ¶ 2.) It is believed that the sole member of Alasia is a citizen of Oregon. (Id.) Defendant Ophrys, LLC ("Ophrys" or "Seller") is a Washington based limited liability company with a principal place of business in Washington. (Id. ¶ 3.) All members of Ophrys are believed to be citizens of either Oregon or Washington. (Id.) Defendant Dodeka ("Dodeka" or "Master Servicer") is a Delaware limited liability company with a principal place of business in Washington. (Id. ¶ 4.) All members of Dodeka are believed to be citizens of either Oregon or Washington. (Id.)[1]

### B. Operative Agreements

On December 31, 2007, Madison and the defendants entered into several agreements, including a Loan Agreement and a Servicing Agreement (collectively, "Operative Agreements"). (Id. ¶ 16.) In the Operative Agreements, Madison extended Alasia loans to purchase charged-off

---

[1] If these "belief" allegations are untrue, and complete diversity is lacking, counsel for defendants must so advise the court, by May 22, 2009. Otherwise, these allegations will be deemed admitted.

credit card receivables that were to be rendered to judgment against the debtors in the relevant jurisdictions.

Plaintiff claims that the defendants, or their principals and affiliates, held themselves out as having significant expertise in the receivable business during the parties' negotiations. (Id. ¶ 12.) Plaintiff alleges that the defendants indicated that their success was the result of many years experience identifying and purchasing appropriate bad debt accounts and then profitably collecting them. (Id. ¶ 12.) Specifically, Plaintiff alleges that defendants represented to Madison that, in determining which debt to purchase, defendants use a "scrub and screen" methodology, whereby defendants apply certain specified criteria designed to avoid the purchase of receivables that were less likely to be collected. (Id. ¶ 13.) In order to avoid purchasing receivables from debtors whose balances were too large, for which there was a low probability of recovery, or which were so small that recovery was not worth the expense, Plaintiff alleges that Alasia was to target accounts with an average face value of $5,000 to $8,000. (Id.) Plaintiff claims that it relied upon defendants' representations regarding their implementation of the "scrub and screen" methodology, as well as other policies, documents and practices of the defendant before entering into the Operative Agreements at issue in this dispute. (Id. ¶ 15.)

The Operative Agreements set forth the structure of the loans between the parties, the termination dates/events and the funding procedures. (Id. ¶¶ 17-31.) The Operative Agreements also required that the defendants: i) deliver specified financial reports and officer certificates to Madison at specified times, ii) comply with the Recovery Policy, iii) permit Madison full access to Seller's and Master Servicer's business records, iv) purchase only Eligible Portfolios comprised of Eligible Portfolio Assets pursuant to the "scrub and screen" methodology set forth in the Servicing Agreement, and v) maintain proper books of record and account and permit

Madison and its representatives to inspect such books and records upon reasonable notice. (Id. ¶¶ 32-40.)

### C. Events Leading to the Termination of the Loan Agreement

Following a Borrowing Request from Borrower in November 2008, Plaintiff became concerned that defendants had not been complying with their contractual obligations. (Id. ¶¶ 9, 44.) On numerous occasions Plaintiff requested information from defendants to evaluate these concerns. (Id. ¶ 9.) Plaintiff claims that defendants repeatedly delayed in producing this information. (Id.) Plaintiff further alleges that the incomplete information defendants did divulge only served to confirm Madison's concerns that Borrower had failed to adhere to the funding procedures set forth in the Loan Agreement. (Id. ¶¶ 9, 45.) Approximately seventy percent of the proposed Portfolio Assets did not meet the criteria to be an Eligible Portfolio Asset. (Id.)

On or about December 9, 2008, Plaintiff sent a letter to Defendants, advising them that Madison would be exercising its rights under the Operative Agreements to conduct an on-site visit of Defendants' business, for the purpose of conducting a due diligence review, verifying compliance with the representations, warranties and covenants of each entity, and discussing the business, operations, properties, financial conditions and other business items. (Id. ¶¶ 9, 46.) Plaintiff claims that, when it made its on-site visit, defendants refused to grant Madison's representatives access to their books and records. (Id. ¶¶ 9, 47.)

On December 24, 2008, in what Plaintiff claims was a partial response to an information request, defendants provided Madison with a DVD containing records and correspondence relating to 318 accounts designated by Madison. (Id. ¶ 49.) During the course of reviewing the information contained on the DVD, Madison discovered that, in at least three instances,

Defendant Dodeka or its Subservicers instructed judgment advisors to make their checks payable to parties other than Alasia, LLC, in violation of Section 6.03 and Exhibit E to the Servicing Agreement. (Id. ¶ 50.) Madison also discovered that receivables were being settled for less than the "First priority" or "Second priority" thresholds set forth in the Recovery Policy, without evidence of any "extenuating circumstances." (Id. ¶ 51.) Madison suggests that defendants' failure to comply with the required Recovery Policy may explain why Recoveries fell behind the Standard Liquidation Curve.

Plaintiff also alleges that, on numerous occasions, Defendants made representations to Madison, through officer's certificates and through the acceptance of loan proceeds, that defendants were complying with their obligations under the Operative Agreements. Specifically, Plaintiff asserts that the defendants repeatedly certified that they were operating their business in compliance with the Recovery Policy and the "scrub and screen" methodology established in the Operative Agreements, and that Recoveries would be handled in the contractually agreed-upon manner. (Id. ¶ 10.) Plaintiff claims that these certifications and representations further reinforced Madison's reasonable expectations that defendants were properly operating the business within the parameters that they had agreed to operate. (Id.)

Plaintiff claims one such "false representation" was made on January 7, 2009, when Dodeka sent Madison a Master Servicer's Certificate certifying that as of that date, "no Servicer Termination Event or event that with notice, the lapse of time or both would become a Servicer Termination Event has occurred."[2] (Id. ¶ 52.) Plaintiff asserts that the representations in this

---

[2] Plaintiff's complaint defines the term "Servicer Termination Event" to include, among other things: (1) the failure of the Master Servicer to duly observe or perform any of its covenants or agreements and the continuation of such failure for a period of 30 days; and (2) the incorrectness of any representation, warranty, certification, or material statement of the Master Servicer made

5

Master's Servicer's certificate were falsely made due to Dodeka's aforementioned failure to fulfill contractual obligations and Dodeka's false representations regarding its compliance with the Recovery Policy and purchase of only Eligible Portfolios and Eligible Portfolio Assets. (Id.) Plaintiffs allege that the defendants never disclosed its failure to comply with the Recovery Policy, the agreed-upon procedures for handling of Recoveries or other terms and conditions of the Operative Agreements. (Id. ¶ 53.)

On January 9, 2009, pursuant to Section 10.02(a) of the Loan Agreement, Madison provided notice to Borrower that certain Termination Events occurred, primarily defendants' contractual violations, refusal to disclose required information and failure to provide required access. (Id. ¶¶ 9, 54, 55.)

---

in any Basic Document or any certificate, report or other writing delivered pursuant to any Basic Document to which the Master Servicer is a party.

## III. PROCEDURAL HISTORY AND THE COMPLAINT

On January 20, 2009, the plaintiff filed its Complaint in the United States District Court,

Southern District of New York. The Complaint alleges three separate claims for relief under

New York State law for which Plaintiff seeks both compensatory and punitive damages.

In Count I of its Complaint, Plaintiff asserts a breach of contract claim against

defendants. (Id. ¶¶ 59-64.) Plaintiff claims that defendants breached the Loan Agreement and

the Master Sale and Servicing Agreement by:

> (1) failing to comply with the Recovery Policy; (2) failing to purchase only
> Eligible Portfolios and Eligible Portfolio Assets as determined according to the
> requirements set forth on Schedule I of the Servicing Agreement, including, but
> not limited to, the proper application of the "scrub and screen" methodology set
> forth in Schedule X of the Servicing Agreement; (3) purchasing receivables that
> were stipulated judgments; (4) failing to provide Madison's representative(s)
> access to information to conduct a due diligence review of Defendant's books
> and financial records, and permit copies of such information to be made; (5)
> failing to timely deliver required reports (including financial reports) and officer
> certificates to Madison at the contractually specified times; and (6) failing to
> maintain proper books of record and account with complete and accurate entries
> of all financial and business transactions relating to the Defendants' business.

(Id. ¶ 62.)

In Count II of the Complaint, Plaintiff alleges that defendants breached the implied

covenant of good faith and fair dealing contained in the Operative Agreements, which required

"Defendants not do anything which will have the effect of destroying or injuring the right of

Madison to receive the fruits of the contracts and that Defendants not act arbitrarily or

irrationally in exercising their discretion under the Loan Agreement and the Servicing

Agreement." (Id. ¶¶ 65-69.) Specifically, Plaintiff asserts that defendants breached the implied

covenant of good faith and fair dealing when they:

> failed to properly apply the 'scrub and screen' methodology for evaluating
> whether a Portfolio was an Eligible Portfolio comprised of Eligible Portfolio
> Assets; used funds to purchase Portfolios that were not Eligible Portfolios and

7

Portfolio Assets which were not Eligible Portfolio Asserts; and agreed to settle
receivables outside the parameters of the Recovery Policy.

(Id. ¶ 68.)

In Count III of the Complaint, Plaintiff asserts a claim of negligent misrepresentation.

(Id. ¶¶ 70-77.)  Plaintiff states that, pursuant to the Loan Agreement, defendants were required to

provide Madison with officer's certificates confirming that they had complied with various

contractual provisions.  (Id. ¶ 71.)  The Complaint asserts that, as a result of the parties'

contractual relationship, defendants had a duty to give correct information in these certifications.

(Id. ¶ 72.)  Plaintiff grounds its claim of negligent misrepresentation in a purported breach of that

duty:

> [i]n providing the officer's certificates and in accepting the proceeds of loans and
> advances from Madison, Defendants certified and represented that the related
> Portfolios were Eligible Portfolios, that each Portfolio Asset therein were
> Portfolio Assets, that no Potential Termination Event or Termination Event
> existed on the Loan Date, that the Recovery policy was being adhered to, that
> Recoveries were being handled in the manner specified in the Servicing
> Agreement, and that the other contractual prerequisites and obligations had been
> satisfied.

(Id. ¶ 73.)  The Complaint alleges that, at the time that defendants made these certifications and

representations, the defendants should have been aware that the representations were false and

that Madison would rely on these certifications in advancing Loans pursuant to the Loan

Agreement.  (Id. ¶¶ 74-76.)  Madison claims that as a result of defendant's negligent

misrepresentation and Madison's reliance thereon, Madison has suffered and continues to suffer

damages in an amount to be proved at trial

Defendants now move to dismiss Counts II and III, asserting that both claims are wholly

based on defendants' alleged failure to comply with their contractual obligations.  Solely

concerning the claim for negligent misrepresentation, defendants also purport that Plaintiff failed

to allege an "economic loss" that is separate from the economic damages that Plaintiff seeks in its breach of contract claim.

## IV. LEGAL STANDARDS AND DISCUSSION

### A. Motion to Dismiss

In deciding a motion to dismiss, made pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 44 (2d Cir.2003); see also Roth v. Jennings, 489 F.3d 499, 510 (2d Cir.2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007) (internal quotation marks, citations, and alterations omitted). Indeed, a plaintiff must assert "enough facts to state a claim to relief that is plausible on its face." Id. at 570. This "plausibility standard" is a flexible one, "oblig[ing] a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir.2007), cert. granted, 128 S.Ct. 2931 (2008).

### B. Breach of Implied Covenant of Good Faith and Fair Dealing

Under New York law, there is a covenant of fair dealing and good faith implied in all contracts. See 511 West 232nd Owners Corp. v. Jennifer Realty Co., 98 N.Y.2d 144, 153 (2002); Carvel Corp. v. Diversified Mgmt. Group, 930 F.2d 228, 230 (2d Cir.1991). Breach of the implied covenant is considered a breach of the underlying contract. See Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 80 (2d Cir. 2002). "This covenant embraces a pledge that

neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Id. While the implied covenant of good faith and fair dealing does not "imply obligations inconsistent with other terms of the contractual relationship," it does encompass "any promises which a reasonable person in the position of the promisee would be justified in understanding were included." Manhattan Motorcars, Inc. v. Automobili Lamborghini, 244 F.R.D. 204 (S.D.N.Y. 2007) (quoting Murphy v. American Home Prods. Corp., 58 N.Y.2d 293, 304 (1983); Rowe v. Great Atl. & Pac. Tea Co., 46 N.Y.2d 62, 69 (1978)). Accordingly, "[a] claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract." ICD Holdings S.A. v. Frankel, 976 F.Supp. 234, 243-44 (S.D.N.Y.1997); Murphy, 58 N.Y.2d 293 (holding that the implied obligation is simply "in aid and furtherance of other terms of the agreement of the parties.")

In this instance, Plaintiff alleges a breach of the implied covenant for a violation of an express provision of the contract. Because Count II is duplicative of Plaintiff's breach of contract claim, it is dismissed with prejudice.

**C. Negligent Misrepresentation**

To state a claim for negligent misrepresentation, under New York law, a plaintiff must adequately plead five elements: "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that it should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to

10

rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." Hydro Investors, Inc. v. Trafalgar Power, Inc. 227 F.3d 8, 20 (2d Cir. 2000).

The court considers three factors to determine if a special relationship and duty exist: "whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." Suez Equity Investors, L.P. v. Toronto-Dominion Bank, 250 F.3d 87, 103 (2d Cir. 2001). If the duty between the parties arose out of a contract, such that the contract required a correct representation, then any misrepresentation must be pled as a breach of contract, not as a tort claim for negligent misrepresentation. See PPI Enterprises (U.S.), Inc. v. Del Monte Foods Co., No. 99 CV CV 3794, 2003 WL 22118977, at *26 (S.D.N.Y. Sept. 11, 2003) (applying the "well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract has been violated); JP Morgan Chase Bank v. Winick, 350 F.Supp.2d 393, 404 (S.D.N.Y. 2004).

Defendants submit that Plaintiff's negligent misrepresentation claim must be dismissed because defendants' alleged failure to comply with its contractual obligations (providing inaccurate or incomplete certifications) does not impose a legal duty on the defendants separate and apart from the obligations arising out of the contract. They are correct.

Plaintiff's negligent misrepresentation claim is premised on Defendants' alleged provision of inaccurate and incomplete officer's certificates, on which Plaintiff relied when it extended loans. The Operative Agreements contained provisions, which required defendants to "deliver specified financial reports and officer certificates to Madison at specified times [and to] certify that certain conditions have been satisfied on a monthly basis and upon acceptance of the

11

proceeds of any Loan or Advance." (Compl. ¶ 32.) In its third claim for relief, Plaintiff asserts,

"As a result of the Parties' contractual relationship, Defendants had a duty to give correct

information in these certifications." (Compl. ¶ 72.) Thus, the only basis for any duty between

Plaintiff and defendants was the contract that defendants allegedly breached by not providing

accurate officer's certificates. Therefore, any damage that resulted from the inaccurate

certificates arose from a breach of contract, not from a tort. Accordingly, Count III of the

Complaint is dismissed with prejudice.

## V. CONCLUSION

Defendants' motion to dismiss Plaintiff's second and third causes of action for

breach of implied covenant and good faith and negligent misrepresentation is granted in

its entirety.

Dated: May 12, 2009

U.S.D.J.

BY ECF TO ALL COUNSEL

12